EL PASO BUILDING AND LOAN ASSOCIATION V. E. D. AND E. M. LANE.

No. 7995.

**Usury—Building and Loan Association.**—A building and loan association loaned to one of its members $1300, taking his obligation for $2000, bearing 10 per cent interest. By a transaction among the members an adjustment was made and restoration by the association to its members each of stipulated usurious interest collected. Upon faith of such adjustment new members bought stock in the company. In suit by the member making this loan to have credited upon his obligation all his payments of interest as well as his payments upon his stock, and applied to the principal he was owing, and a surrender of securities, *held:*

1. While the contract in fact remained usurious a stipulation otherwise could not affect the nature of the contract as usurious.

2. Nor could new members subscribing to stock on strength of such adjustment enforce such usurious contract.

3. The money paid in on stock subscriptions could not be insisted upon as payment upon the loan.

APPEAL from El Paso. Tried below before Hon. T. A. Falvey. The opinion states the case.

*Nugent & Stanton* and *W. M. Caldwell,* for appellant.—1. The agreement of appellant's stockholders with appellant and with each other, that each borrowing stockholder should compromise with appellant the questions of usury growing out of appellant's loan to such stockholder, and should substitute a new contract for the original usurious contract, is a sufficient consideration to support the compromise and substituted contract made and entered into by and between appellant and appellees, dated October 27, 1887. Rev. Stats., art. 2972; Cockle v. Flack, 93 U. S. Rep., 344; Taylor v. Merrill, 64 Texas, 495; Rhine v. Ellen, 36 Cal., 373; Nourse v. Prune, 7 Johns. (Ch.), 69; Trotter v. Curtis, 19 Johns. (N. Y.), 160.

2. The compromise and substituted contract made by and between them and appellant October 27, 1887, if they executed the same with the intention that innocent persons should alter their position for the worse on the faith thereof, and with intent to induce such persons to change their position for the worse on the faith thereof, and if such persons did in truth and in fact alter their position for the worse on the faith thereof in favor of such persons was conclusive. 1 Pome. Eq. Jur., secs. 397, 404.

3. The written contract made and entered into by and between appellees and appellant, dated October 27, 1887, purged the original contract of usury and substituted a new and nonusurious contract in lieu thereof. Building and Loan Assn. v. Robinson, 68 Texas, 163; Clark v. Phelps, 6 Metcalf, 296; Chadbourne v. Watts, 10 Mass., 120; Greenw. Pub. Pol., Rule 49.

4. It is not usury for a building and loan association to charge its borrowing stockholder a premium for a loan made to him when

the amount of interest stipulated to be paid does not exceed 12 per cent per annum on the amount actually received by the borrowing stockholder. Jackson v. Cassidy, 68 Texas, 282; 2 Am. and Eng. Encyc. of Law, pp. 628–632; Endlich on B. and L. Assns., secs. 338, 388, 390.

*Nugent & Stanton* and *W. M. Caldwell*, for intervenors.—Appellees E. D. and E. M. Lane held appellant, the El Paso Building and Loan Association, out to the world as a solvent corporation that was not embarrassed by having its assets loaned out at usurious rates of interest, and so held it out for the purpose of inducing the public to purchase the stock of said corporation; and intervenors having purchased stock on the faith of such holding out, appellees are estopped from claiming that said corporation had made a usurious loan which was in existence at the time of such holding out.

*Merchant & Teel* and *J. A. Buckler*, for appellees.—1. Any attempt to cover a usurious contract by the return of the excess of the usurious interest paid, but omitting to cancel the contract to the extent of the usurious interest charged, and carried into the principal obligation over and above the interest paid, would be a device to cover up the usury in the original usurious contract, unless it clearly appears that the return of interest paid was sufficient to reduce the rate of interest paid on and charged in the original contract to a rate of interest not exceeding 12 per cent per annum on the money actually loaned. Smith v. Glanton, 39 Texas, 367; Watson v. Aiken, 55 Texas, 537; Kendall v. Crouch, 11 S. W. Rep., 587; Jackson v. Bradley, 1 N. Y., 676; Cottrell v. Southwick, 32 N. W. Rep., 22; Musgrove v. Gibbs, 1 Dall., 216; 3 Am. Law Reg., 112; Moncure v. Dermott, 13 Pet., 356; Pars. on Con., 403–405; Herbert v. Association, 17 Bush, 296; Association v. Heider, 55 Iowa, 424; Association v. Smyth, 9 N. E. Rep., 714; Association v. Wilcox, 24 Conn., 147; Bank v. Schermerhorn, 1 Denio, 133.

2. All interest paid on a usurious contract will be applied to the payment of the principal until such principal is extinguished. The note for $2000 is to the extent of $700 void and of no effect. Cons., sec. 11, art. 16; Rev. Stats., arts. 2978, 2979; Stanley v. Westrop, 16 Texas, 200; Ware v. Bennett, 18 Texas, 806.

3. A contract entered into in violation of an implied prohibitory clause in the Constitution, and outside the sphere of the corporation making it, is ultra vires and absolutely void. Web. Dic., "Discount;" Cool. Con. Lim., 3 ed., p. 88; Cons., sec. 16, art. 16; Cons., sec. 11, art. 16; Bish. on Con., sec. 1012; 6 Robinson (La.), 115; Varney v. Justice, 6 S. W. Rep., 458; Bank v. Waggoner, 9 Pet., 399; Bank v. Johnson, 14 Otto, 271; MacLeod on Banking, 43; Fleckins v. Bank, 8 Wheat., 350; Cool. Con. Lim., 286.

4. The auction of money among stockholders to the highest bidder for priority of right, and requiring as a condition precedent from the highest bidder the payment of the premium bid when the loan is consummated, is a device to fraudulently cover usury.

Henry, Associate Justice. — It appears that E. D. Lane subscribed for ten shares of stock in the appellant corporation, which he was to pay for at the rate of $10 per month. In July, 1883, he borrowed from the corporation the sum of $1300, for which he executed his note for $2000, payable on the 1st day of January, 1890, with interest on the last named sum at the rate of 10 per cent per annum, payable monthly; and to secure the payment of the note Lane deposited with the corporation certain securities to be held by it and disposed of for that purpose, and executed a mechanic's lien. Subsequently, for the purpose of relieving the transaction of the element of usury, the following agreement in writing was entered into by the parties:

"El Paso, Texas, October 1, 1887.

"In consideration of the repayment to us by the El Paso Building and Loan Association of the sum of $193.98, the receipt of which is acknowledged in full satisfaction of any excess of the interest legally recoverable under the within obligation that may have heretofore been paid by us, and in satisfaction of any right we have to recover interest paid, and in consideration of the receipt, use, and enjoyment of the money specified in said obligation as loaned to us by said association, and which is a just debt from us to said association, and in further consideration of one dollar ($1.00) to us in hand paid, the receipt of which we acknowledge, we promise to pay said association or order, at the time or times specified in said obligation for its maturity, the principal therein specified, and also to pay thereon at the times specified in said obligation for the payment of interest, interest from this date at the rate of 7.80 per cent per annum; and excepting that the rate of interest of said obligation is from this date forward 7.80 per cent, we declare that said obligation and all writings and securities relating thereto have never been changed nor intended to be, but as to all their terms, tenor, effect, and conditions are in full force, and are binding on us, our heirs, assigns, and personal representatives.

"Witness our hands at El Paso, Texas, the 27th day of October, 1887.

"E. D. Lane,
"Eliza M. Lane."

This suit was brought by Lane and his wife for an injunction against the collection of any part of said note, and for a surrender of the same and all securities.

In addition to the foregoing they charged that Lane had paid to the corporation the sum of $810 on his stock subscription, and the sum of

$1211.10 as interest, and that after deducting the sum of $193.98, usurious interest refunded to him, there still remains a balance of $1017.12 interest paid by Lane to the corporation.  The plaintiffs claimed that the payments made for the stock as well as for interest should be applied to the payment of the sum actually borrowed.

The defendant claimed that the usury in the original transaction was eliminated by the agreement of the 1st day of October, 1887, and that all usurious interest collected previous to that date was refunded, and only lawful interest on $1300 collected after that date.  The defendant also pleaded:

"That all of defendant's stockholders, borrowing and nonborrowing, including plaintiffs (except two), about said date agreed with defendant and with each other to accept said repayment and readjustment in full payment and satisfaction of all claims, rights, and demands arising from said illegal and usurious loans and from any excess of interest paid thereon, and to accept the said readjustment, each in the case of the loan to him, which they all accordingly did by executing and delivering to defendant their several receipts and agreements all similar in their terms and stipulation to exhibit E hereto attached.  [Exhibit E is the receipt and agreement signed by appellees heretofore copied.] That plaintiffs, well knowing that the said loan to said plaintiff E. D. Lane was usurious and illegal, for the reasons aforesaid, and for the purpose of curing said illegality and purging said usury, in consideration of the repayment to them by defendant of the usurious interest by them paid on said loan, and in consideration of the said readjustment, and in consideration of the said agreement of the other borrowing stockholders, on the 27th day of October, 1887, made, executed, and delivered to defendant the aforesaid written receipt and agreement, and thereby agreed to and did release defendant from all demands and liabilities occasioned by said usurious loan and by the excess of interest by them paid thereon, and accepted the said readjustment and received from defendant repayment of said usurious interest, to-wit, the sum of $193.98."

Some persons who purchased stock in the corporation subsequent to the agreement of October 1, 1887, attempted to intervene in the cause, upon the ground that they became stockholders with the knowledge of said agreement and were induced to do so by their belief that it would be carried out in good faith, and that they would be damaged by its breach.  The court sustained a demurrer to the petition of the intervenors and dismissed it.

The facts were proved substantially as alleged.  The cause was tried by the judge without a jury, who rendered judgment in favor of defendant corporation for the sum of $450.10, with foreclosure of its lien upon certain real estate and upon the collaterals placed with it to secure the debt.

We deem it unnecessary to refer in detail to the numerous assignments of error. The contention of the appellant is substantially that the contract of the 1st of October, 1887, discharged the usury, and that the court should have enforced that agreement for the following reasons:

1. Because all usurious interest up to that date was returned to the debtor, and the contract was changed so as to stipulate for only lawful interest after that date.

2. Because the other stockholders of the corporation who had contracts of the same character that Lane had, as well as stockholders who owned the same character of stock but had borrowed no money from the corporation, were parties to the new arrangement and would be damaged by its violation.

3. Because persons not before interested in said corporation purchased its stock after said arrangement upon the faith of its being completed in good faith, who would suffer loss if it was not done.

It is unnecessary for us to say what would have been the effect upon the rights of the parties if all usury in the first contract had been eliminated by the second one. But that was not done. An important element in the usury was the execution of a note for $2000 for the $1300 actually received. That part of the transaction was not pretended to be changed. As long as it continued the original taint of usury remained, and as long as it remained the intervention of other parties upon new or additional considerations could not have the slightest effect toward rescuing the transaction from the condemnation of the law.

It was not proper to apply the payments for stock in the corporation to the discharge of the debt, and the court did not do so. It was correct to apply all payments for interest, whether made before or after the 1st day of October, 1887, to the discharge of the principal.

We find no error in the proceedings of which the defendant corporation or the intervenors can complain, and the judgment is affirmed.

*Affirmed.*

Delivered June 16, 1891.