EMPLOYEES LOAN CO. et al. v. TEMPLETON.

No. 13598.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 1, 1937.

Rehearing Denied Oct. 29, 1937.

Rufus S. Garrett, of Fort Worth, for appellants.

J. A. Templeton, of Fort Worth, for appellee.

SPEER, Justice.

Ralph G. Templeton sued the Employees Loan Company, alleging it to be a fictitious trade-name under which some person or persons to him unknown were conducting a loan business in Fort Worth, Tex., having an agent and representative in charge of the business in the person of J. R. Brown, who likewise was made a party defendant.

Plaintiff's action is for the statutory penalty of double the amount of usurious interest alleged to have been paid by him to the defendants within two years next prior to the institution of the suit.

Plainiff alleged he was employed in the accounting department of the Magnolia Petroleum Company; that on and prior to January, 1934, and continuously since said date, the defendant Employees Loan Company was an assumed trade-name adoped by persons whose names and addresses were unknown to him, and that said unknown persons under said assumed trade-name, acting by and through his or their local agent and representative, J. R. Brown, had been and were conducting a personal loan business in the city of Fort Worth, Tarrant county, Tex., in which business personal loans were made in small sums to individuals, and in this instance to plaintiff, taking no security therefor and in which exorbitant and usurious interest was charged and collected.

Allegations are made that, with full knowledge of the illegality of the business so conducted by them, the persons who really owner the assets of said business and received the usurious interest charged and collected were not revealed to the public, and if known they were persons residing outside the state of Texas, upon whom valid processes issued from courts in this state could not be served.

By the terms of the petition, a rather lurid picture is presented of the nature and kind of business methods employed by defendants. But it is sufficient for our purposes to say that the petition shows that in January, 1934, plaintiff borrowed approximately $25 from defendants, for which he executed his note for $34, due in ninety days; he avers that covering a period of time up to perhaps March 21, 1936 (the date of the last transaction not being given definitely), the transactions between plaintiff and defendants consisted of payments of installments, renewals of delinquent installments, in which would be included additional usurious interest, and sometimes additional advancements of new money. Likewise at the maturity of the renewals and failure to pay similar proceedings would be had; in each renewal usurious interest is clearly shown to have been charged and subsequently paid; at the time of the institution of the suit there was a small amount remaining unpaid on the last renewal of previous loans and renewals; but there was not enough remaining unpaid to offset the amount of interest paid by plaintiff. The petition shows plaintiff had received from defendants the sum of $157.20 and had repaid the aggregate sum of $220.60, or $63.40 in interest, and prayer was for double the usurious interest and for costs of suit.

The petition alleged sufficient facts also to justify the issuance of an injunction against defendants and their respective employees, restraining them from molesting and harassing him, his family, and his employer, by telephone or otherwise about the balance of the indebtedness remaining unpaid.

The defendant J. R. Brown answered that his connection with the transactions alleged by plaintiff consisted only of being on salary as an employee of the defendant company since January 1, 1936, and personally received no part of any interest paid by plaintiff; that his connection therewith consisted only in receiving payments for his principals and in each instance the full amount so received by him was transmitted to his said principals, and prayed that plaintiff take nothing as against him in the pending suit.

The defendant Employees Loan Company answered with a general denial and specially that prior to July 15, 1935, the "Employees

Loan 'Company" was owned by National Accounting Company, and that on about that date said trade-name, with its assets, was purchased by the J. H. Taylor Trust, and that the J. H. Taylor Trust did not assume any of the liabilities of the National Accounting Company, doing business under the trade-name of Employees Loan Company, and having had no connection therewith prior to said July 15, 1935, was not responsible for any obligation that may have been owing by the Accounting Company to plaintiff. That, upon the purchase by the Taylor Trust of plaintiff's outstanding obligation, it paid full face value therefor in cash without knowledge of any vice in the transaction; that the Taylor Trust has not received any sum of money paid out by plaintiff in usurious interest prior to the date of purchase by it.

Defendant Employees Loan Company further answered that on March 21, 1936, and before the commencement of this suit, it paid to plaintiff the sum of $1.75 in cash and made an additional loan to him in cash and took his note for $30, crediting the excess of $16.80 in the $30 on a previous obligation to the Loan Company, which was due and unpaid, in consideration for the execution and delivery to it of a release by plaintiff of all claims of every kind and character he then had against the Employees Loan Company for past transactions had with it, and that said receipt for the $1.75 and the release were executed and delivered before it made payment of the money, and before it made the new loan and advanced the money thereon, but for which said receipt and release it would not have made said advancements. The release is pleaded in haec verba, the prayer being that plaintiff take nothing by reason of his suit and that it recover in cross-action against plaintiff the balance of the $19.20, alleged to be due on said last-mentioned loan, and for general relief.

The plaintiff replied with a plea of want of consideration to the allegations made by defendants that a settlement was made with plaintiff for all claims he had growing out of transactions with the Employees Loan Company and release executed therefor on March 21, 1936.

No jury being demanded, the case was tried to the court upon the testimony offered by all parties. Judgment was entered for plaintiff against Employees Loan Company and the J. H. Taylor Trust, for $103.30, and that plaintiff take nothing against J.

R. Brown, and against the Employees Loan Company on its cross-action, but perpetuated the injunction theretofore issued as against all defendants. The Employees Loan Company and the J. H. Taylor Trust have perfected and are prosecuting this appeal.

There are findings of fact and conclusions of law filed by the court, and a brief narrative agreed statement of facts in the record. From the latter and those findings of fact by the court shown by the agreement to be correct, there is little controversy between the parties except as to the application of the law under the facts.

By stipulations in the agreement filed, it seems the questions we are called upon to consider are:

(1) Could the court properly render judgment against J. H. Taylor Trust when citation was only served on J. R. Brown, agent and manager of the Employees Loan Company?

(2) The J. H. Taylor Trust, only having adopted and used the trade-name of the Employees Loan Company since June 15, 1935, was it responsible to plaintiff for the penalty on usurious interest paid by him to the Employees Loan Company when it was owned by another?

(3) J. H. Taylor Trust having purchased plaintiff's note from the National Accounting Company, on or about June 15, 1935, paying face value therefor, could plaintiff recover against the trust without proof that it knew said note or a part thereof consisted of usurious interest?

(4) Was the settlement agreement given by plaintiff on March 21, 1936, in consideration of $1.75 binding upon him?

(5) Was the release executed by plaintiff, on March 21, 1936, in consideration of the new loan promised, and subsequently made, binding and effective between the parties?

The judgment rendered by the court is in effect against the contention of defendants, and favorable to that of plaintiff. Defendants have saved each of the questions by proper assignment of error. We shall discuss them in the order given. The Employees Loan Company and the J. H. Taylor Trust are appellants and plaintiff Ralph G. Templeton is appellee.

Article 5924, Rev.Civ.Statutes, provides how and under what circumstances a person or group of persons may transact business in this state under an

assumed or trade-name. The appellants are shown to have complied with that statute prior to the institution of this suit. This being true, they could sue or be sued either in their proper names or in their trade-name as assumed by them. Clark v. First Natl. Bank of Wichita Falls (Tex. Civ.App.) 5 S.W.(2d) 822; Stinson v. King (Tex.Civ.App.) 83 S.W.(2d) 398 (writ of error dismissed). A supplemental petition by appellee alleged that the Employees Loan Company was the assumed or trade-name of the J. H. Taylor Trust; a stipulation in the agreed facts shows that the National Accounting Company used the Employees Loan Company as a trade or assumed name prior to June 15, 1935, and from that date on it has been used as a trade or assumed name by the J. H. Taylor Trust; the answer of appellants is to the same effect. They were therefore in court for all purposes. The judgment of the court could not be successfully attacked by appellants for want of service and appearance. Grayson v. Cate (Tex.Civ.App.) 95 S.W.(2d) 194 (writ of error dismissed); Hutchison v. First Natl. Bank (Tex.Civ. App.) 67 S.W.(2d) 1052 (writ of error dismissed). The assignment of error raising the point is overruled.

■ Under the next point raised, appellant challenges the right of the court to render judgment against them for transactions had prior to July 15, 1935, when they admittedly had begun to operate under the assumed trade-name. Their contention is well taken and must be sustained. The agreed statement of facts shows it was proven upon the trial: "Employees Loan Company was the assumed name which was used by the National Accounting Company and which fact was duly shown by the Assumed Name Record of Tarrant County, Texas, and said National Accounting Company used said assumed name until on or about June 15, 1935, when a part of the assets of the National Accounting Company was sold to the J. H. Taylor Trust, which said Trust thereupon adopted and has since used said assumed name." Article 5073, Rev.Civ. Statutes, which authorizes the enforcement of the penalty for the collection of usurious interest, must be strictly construed. It should not be extended beyond its plain terms and meaning. It does not exist by virtue of the constitutional provisions condemning the exaction of usury. It purports to be a statutory penalty for a violation of the constitutional inhibition against usury. By the terms of the statute referred to, it will be seen it penalizes the person who receives the usury in this language: "The person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same." The fact that appellants subsequently came into possession of a note, the result of a series of transactions upon which appellee had paid to another usurious interest, from which illegal acts appellants had not profited, would not render them liable to appellee and permit him to penalize them for something in which they did not participate.

■ Bearing on this point, it was said by the Commission, and adopted by the Supreme Court, in Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.(2d) 942, 946:

"Furthermore, this statute imposes a penalty and therefore is to be strictly construed, at least in the sense that it is not to be extended beyond the necessities of the case and is not to be so broadened as to include persons or things outside of its immediate scope and object. [Citing former decisions].

"A contract for usury is declared void as to interest, and one who has received such interest is required by way of penalty to restore it and to pay also a like amount. The statute was not intended to take twice the amount paid from one who has but collected as agent and who has not profited at all from the payment."

■ The court in the same opinion adopts as correct the rule announced in Deming Investment Co. v. Giddens (Tex. Civ.App.) 41 S.W.(2d) 260, where it was said: "Under this statute, appellees are allowed to recover double the amount of the interest from the one receiving the same; *that is, the one for whose benefit it was paid.*" (Italics ours.)

■ The judgment rendered covers a penalty against appellants for usurious interest received by the National Accounting Company, and in which appellants did not participate; and for this reason the assignments raising the point must be sustained.

■ Another question raised is similar in some respects to that last discussed, but embraces more which will perhaps be raised upon another trial. That is, the Taylor Trust having purchased the plaintiff's note on July 15, 1935, and paid value

for it without notice of any usury claim, could it be thereafter held in a suit for usury? As stated above, appellant would not be responsible for a penalty in double the amount of interest paid to another, but would only be liable in such action for double the amount received by it. There is a difference in a defense urged to the payment of an obligation based on usury and an action by the borrower for the penalty based on usurious interest paid within the prescribed time. The former is defensive and the latter affirmative. Mercer v. Bonner Loan Co. (Tex.Civ.App.) 73 S.W.(2d) 988. The fact that appellants purchased the note of appellee before maturity and for value would not relieve the note of the taint of usury if it existed while in the hands of the original payee. The usury statute declares a note void as to all interest if by the transaction a greater rate may be collected than 10 per cent. per annum. This being true, the sale, transfer, or assignment of the note cannot make it valid. This principle is announced in Dallas Trust & Savings Bank v. Brashear (Tex.Com.App.) 65 S.W.(2d) 288; Gilder v. Hearne, 79 Tex. 120, 14 S.W. 1031. In the last cited case it was said: "A usurious contract * * * gathers no vitality by its circulation * * * and it is void in the hands of an innocent holder." The assignment based upon this proposition is overruled.

■ Points 4 and 5, set out above, are on the same issue and may be discussed together. They involve the validity of the receipt and release by appellee, executed and delivered on March 21, 1936. The instruments read as follows:

"City of Forth Worth, State of Texas,
                              3/21/36

"Whereas I, the undersigned, have heretofore at different times borrowed money from Employees Loan Company, trading and doing business at 309 Petroleum Bldg., and each of said loans having heretofore been paid and fully settled and I, being desirous of again procuring more money from Employees Loan Co. do now state that all claims and all suits or demands of any kind that I might have had or do have, or claim to have against Employees Loan Company and/or any other person or persons, firms or corporations, concerning said loan or loans, have been released, and I do now here release and discharge them, and each of them, and all other persons, firms and corporations therefrom, it being my

intention, if any cause of action exist in me, by reason of any transaction heretofore had with them, or either of them, to release them, and each of them, and all other persons, firms and corporations therefrom, and to never in the future ask or demand, or sue upon such claim or demand of any character growing out of any transaction or contract of any kind heretofore made with them, or either of them, and all other persons, firms and corporations, or any agent or employee representing them, under any name that they do, or may do, or have done business, and I recognize that this release is a part of a consideration to advance to me further money which I have received.

"[Signed]   R. G. Templeton  [Seal]
"——————          [Seal]
"Witness
"[Signed]   E. Davis."

"$1.75, 3/21/36, I/we acknowledge receipt of One & 75/100 dollars from Employees Loan Company as settlement in full of all claims that I/we may have or allege to have against them or any of their employees by reason of any dealings that I/we may have had with them or their employees.

"[Signed]   R. G. Templeton
"Witness
"[Signed]   E. Davis  ——————
"Acct. No. 591      (Remarks)——————."

The defense urged by appellee to these instruments consisted of a want of consideration; there was no plea of fraud or mutual mistake made as to their execution and delivery. The court disregarded these two instruments in his findings of fact. He found appellee did not receive the $1.75 mentioned in the receipt, and that he did not know what he was signing at the time; this was said in connection with both instruments; as stated above there was no pleading by appellee upon which to base a finding and judgment that he did not know what he was signing at the time, and if these documents be stricken it must be upon the ground that they were without consideration. The court found the $1.75 recited in the receipt was not paid, which finding would be binding upon us but for the agreed statement of facts between the parties, which, in the paragraph referring to the two instruments, says: "The evidence shows that the defendant, Employees Loan Company would not have advanced the additional sum of $13.20 in cash loaned plaintiff at the time had plaintiff not sign-

ed said release and settlement voucher." The foregoing facts agreed to between the parties is sufficient to show consideration for signing the receipt and release.

The Legislature and courts have gone about as far as they can, it seems, to protect persons from unscrupulous lenders of money. The law will not permit persons to make contracts in advance of usurious transactions to the effect that they will not claim their legal rights, under the law, to resist payment because of usury, nor enforce penalties on that account. Such agreements are void as against public policy; but after these safeguards have been placed around individuals, and they have been duped into making such unconscionable contracts, and the right of either resisting payment of interest because of usury or to sue for the penalty after it is paid accrues to them, there is no good reason why they cannot compromise, barter, or release that right. The general rule is announced in 66 C.J. p. 290: "A release of all claims for usurious interest paid, or an agreement not to reclaim the payment, made at the time of the loan, or before the usury is paid, will not prevent the borrower from recovering back such excessive interest, even though the release is under seal. But after a right to recover usury paid has accrued, it may, like any other claim, be released or compromised upon valuable consideration, even though the contract of release also provides for the payment of usurious interest. On the other hand, if the release is without consideration, it will not prevent a recovery back of the usury paid."

In the case of Cotton v. Beatty (Tex.Civ.App.) 162 S.W. 1007 (writ dismissed), the issues were whether or not a party could compromise and release his action for the penalty in payment of usurious interest, and whether or not the making of a second usurious loan was a sufficient consideration for such compromise and release, and it was there said: "Where defendant made plaintiff a second usurious loan in consideration of plaintiff's releasing his right to sue for usury in the first loan, that consideration is sufficient and the agreement is a defense to the usury in the first transaction." To the same effect are the cases of Gibson v. Hicks (Tex.Civ.App.) 47 S.W.(2d) 691 (writ refused); Stout et al. v. Ennis Nat. Bank, 69 Tex. 384, 8 S.W. 808; Fontaine v. Davis & Powell (Tex.Civ.App.) 164 S.W. 386.

The loan made to appellee by appellants subsequent to the execution of the release and settlement on March 21, 1936, in which it was agreed that appellee received $13.20, and but for the execution of the releases the money would not have been delivered to appellee, we believe furnishes a sufficient consideration for the settlement.

If upon another trial some other defense to these releases should be urged and proven, then, of course, what we have said here would only be applicable to the facts and pleadings presented on this appeal. We think in the circumstances before us the releases were effective as to all causes of action which had then accrued.

For the errors pointed out that part of the judgment below in favor of appellee for the recovery of money must be reversed and the cause remanded. The facts developed upon the trial are not sufficient to enable us to render judgment for the amount appellee may be entitled to. There will doubtless be amended pleadings filed before another trial is had, and it would therefore be useless for us to say more with reference to the rights of the parties as disclosed by the present pleadings and testimony.

There are ample grounds shown to support the order of the court in the issuance of the writ of injunction in this cause, and this part of the judgment will not be disturbed, but is here in all things affirmed. All other parts of the judgment are reversed and the cause remanded.

Judgment affirmed in part and reversed and remanded in part.